**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | |
|---|---|
| **MARVIN STEVE MILLS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   **CIVIL ACTION NO. 5:03-02401** |
| | ) |
| **JANE DOE GREEN,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (Doc. No. 16.) By Standing Order filed on December 1, 2003, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. No. 4.)

**PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

On December 1, 2003, Plaintiff, an inmate then confined at the Southern Regional Jail [SRJ], Beaver, West Virginia, and acting *pro se*, filed his Complaint in this matter claiming entitlement to relief pursuant to 42 U.S.C. § 1983.[1] (Doc. No. 1.) Plaintiff names as Defendants the following individuals employed at SRJ: John Doe Huppenthal, Administrator; Jane Doe Green, Lieutenant; Larry Bunting, Lieutenant; John Doe Mudd, Corporal; and John Doe Sowalski, Correctional Officer (Id. at 6.) Plaintiff alleges that after being confined to segregation as a result of a write-up issued

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2s 652 (1972).

on August 13, 2002, Defendant Green caused him to remain in segregation after he had served his twenty (20) day sanction until March 13, 2003. (Id. at 6-7.) Plaintiff alleges that he was placed back into segregation on July 28, 2003, by Defendant Larry Bunting until October 8, 2003, without being charged with a disciplinary violation. (Id. at 7.) Plaintiff further alleges that on February 5, 2003, Defendant Larry Bunting ordered "that all Bibles, books, newspapers, and any all other paper[] items to be removed from [his] cell, with the exception of letters from the court or attorneys." (Id. at 7-8.) Plaintiff also alleges that while he was in segregation, he was subjected to wearing leg irons and handcuffs when he used the exercise yard. (Id. at 8.) Plaintiff seeks an order of the Court directing Defendants to "[s]top the arbitrary abuse of authority." (Id. at 7.) He further seeks monetary relief. (Id.)

On June 15, 2003, Defendants, by counsel, filed their Motion to Dismiss, or in the Alternative, Motion for Summary Judgment and Memorandum in Support. (Doc. Nos. 16 and 17.) Defendants contend that Plaintiff's Complaint must be dismissed because he failed to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e(a), prior to filing his Complaint. (Doc. No. 17 at 1-3.) Defendants initially state in their Memorandum in support of their Motion that Plaintiff "failed to file any administrative grievances concerning the subject matter of [this] litigation." (Doc. No. 17 at 2.) Defendants later state, however, that Plaintiff "failed to avail himself of the grievance procedure concerning the allegations of this Complaint at Levels II, and III." (Id. at 3.) Defendants attach to their Memorandum an Affidavit from John L. King II, Chief of Operations for the West Virginia Regional Jail and Correctional Facility Authority, who states that he "found that Inmate Mills has not filed any Inmate Grievance appeal concerning the subject matter of this case." (Doc. No. 17, Exhibit 1.)

On June 29, 2004, Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff, advising him of his right to file a response to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (Doc. No. 20.) Plaintiff did not file any response to the Defendants' Motion.

On January 28, 2005, the undersigned filed his Proposed Findings and Recommendation. (Doc. No. 23.) The undersigned recommended that the District Court deny the Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, because the Court was without sufficient information to conclude whether Plaintiff had exhausted his administrative remedies. The undersigned further recommended that the District Court direct Plaintiff to submit copies of his Level I grievance and response thereto and Defendants to provide the Court with a copy of their Inmate Grievance Procedure. The undersigned also entered an Order on January 28, 2005, granting Defendants' Motion to include Defendant Larry Bunting to the Motion to Dismiss, or in the Alternative, Motion for Summary Judgment filed on June 15, 2004. (Doc. No. 24.)

On February 16, 2005, Defendants filed their "Documentation Required By 'Proposed Findings and Recommendation' Facts and Procedure" thereby submitting a copy of the Inmate Handbook, a copy of the West Virginia Regional Jail and Correctional Authority Policy and Procedure 14003, and copies of all of Plaintiff's requests, grievances, and responses thereto. (Doc. No. 25.)

By Order filed on February 17, 2005, United States District Judge Robert C. Chambers adopted the Proposed Findings and Recommendation and denied Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, directed Plaintiff to submit copies of his Level I Grievance and response thereto, directed Defendants to provide the Court with a copy of their

Inmate Grievance Procedure, and referred the matter back to the undersigned for further proceedings to determine whether Plaintiff exhausted his administrative remedies. (Doc. No. 26.)

On March 9, 2005, Defendants essentially resubmitted the same documentation that they previously filed on February 16, 2005, in response to Judge Chambers' Order filed February 17, 2005, directing Defendants to file additional information. (Doc. No. 27.) Plaintiff did not submit any further documentation as directed by the Court.

## **ANALYSIS**

The Prison Litigation Reform Act [PLRA], 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions under 42 U.S.C. § 1983 "or any other Federal law," though the administrative process may not afford them the relief they might obtain through civil proceedings.[2] See Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 922, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.). Furthermore, administrative remedies must be exhausted with respect to each claim against each and every Defendant or the Complaint must be dismissed under the "total

---

[2] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

exhaustion rule" found in § 1997e(a). See Quinones v. Rubenstein, Civil Action No. 5:02-1365 (S.D.W.Va. Sept. 23, 2003)(C.J. Faber)(Applying a plain meaning reading to the phrase "no action" as stated in § 1997e(a), the District Court concluded that no action shall be brought barring total exhaustion of each and every claim.)(*citing* Graves v. Norris, 218 F.3d 884, 885 (8th Cir. 2000); Givens v. City and County of San Francisco, 2002 WL 31478180, *2 (N.D. Cal. Nov. 5, 2002); Saunders v. Goord, 2002 WL 1751341, *3 (S.D. N.Y. Jul. 29, 2002)). In Quinones, Chief Judge Faber adopted the total exhaustion rule as applied to *habeas* actions filed pursuant to 28 U.S.C. § 2254, and applied it to §1983 and other similar civil rights actions. (Id. at 21.) The Court concluded that the total exhaustion rule "does not detrimentally affect plaintiff's available remedies . . .[r]ather dismissing the present [unexhausted] claims improves judicial economy by encouraging the plaintiff to reshape his complaint to include only cognizable claims." (Id. at 22.) "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999), *cert. denied*, 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedy for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his "available" administrative remedies.)

It appears to be the majority view as well that exhausting administrative remedies after a

Complaint is filed will not save a case from dismissal for want of subject matter jurisdiction. See Neal v. Goord, 267 F.3d 116, 121-122 (2d Cir. 2001)(*overruled on other grounds*), a § 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal,

> allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, . . . if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset.

Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court. . . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court.

The Fourth Circuit has determined that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. Anderson v. XYZ Correctional Health Services, 407 F.3d 674 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. While the inmate must make affirmative efforts to follow administrative procedures, prison officials make those procedures "unavailable" when they thwart the inmate's attempts to follow them. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)).

Defendants have asserted that Plaintiff failed to exhaust his administrative remedies before

filing his Complaint as an affirmative defense, and it is clear that Plaintiff did not do so. In Plaintiff's Complaint, Plaintiff states that he submitted a grievance to Defendant Huppenthal, Administrator, but received no reply. (Doc. No. 1 at 4.) He states that he further submitted a grievance to the West Virginia Division of Corrections [W.Va. DOC] and Jim Rubenstein, Commissioner W. Va. DOC, but again received no response. (Id. at 5.)The undersigned previously concluded that a material issue of fact remained as to whether Defendant Administrator Huppenthal responded to Plaintiff's Level I grievance and if not, whether the failure to respond was deemed a denial which Plaintiff was required to appeal to the Chief of Operations. Defendants have submitted a copy of the WV Regional Jail and Correctional Facility Authority Handbook of Inmate Rules and Procedure, a copy of the West Virginia Regional Jail and Correctional Facility Authority Policy and Procedure 14003, and copies of Plaintiff's administrative grievances and responses thereto. The undersigned has determined that after reviewing the documents submitted by Defendants that Plaintiff failed to exhaust his administrative remedies prior to instituting this civil action.

Pursuant to the West Virginia Regional Jail and Correctional Facility Authority Policy and Procedure 14003[3], inmates have a grievance procedure through which they may seek review of complaints which relate to their confinement. (Doc. No. 25, Exhibit 2 at 1-2, Procedure B.) Under this Procedure, inmates are required first to submit a grievance to the Administrator of the facility in which they are confined. (Id., at 2, Procedure C, ¶2.) Upon receipt of the grievance, the Administrator may reject the grievance if it appears on its face to have been filed in bad faith, or if other administrative procedures exist that have not been utilized. (Id. at 3, Procedure C, ¶3.) If the

---

[3] The grievance procedure is also set forth in the West Virginia Regional Jail and Correctional Facility Authority's Handbook of Inmate Rules and Procedure. (Doc. No. 25, Exhibit 1.)

grievance is rejected, the Administrator must respond to the inmate advising him of the rejection. (Id.) If the grievance is not rejected, the Administrator may assign a staff member to investigate the complaint who is to submit a written report within forty-eight (48) hours. (Id., ¶5.) Within two (2) days of receipt of the written report, the Administrator must provide a written decision which identifies the action taken, the reasons for such actions, and procedures for appeal of the decision. (Id., ¶6.) If the Administrator's response is unfavorable, the inmate may appeal within five (5) days of the receipt of the Administrator's decision to the Chief of Operations. (Id., Procedure D, ¶1.)) Upon receipt of an appeal, the Chief of Operations must immediately direct the Administrator to forward copies of all information relating to the inmate's grievance within two (2) business days. (Id., ¶3.) The Chief of Operations may then cause an investigation of the report to be conducted and a written report to be submitted to the Chief of Operations within fifteen (15) days. (Id., ¶4.) Within ten (10) days of receipt of all information relating to the grievance, the Chief of Operations must provide a written decision which identifies the correction action taken or the reasons for denying the grievance. (Id., at 3-4, ¶5.) Finally, if the Chief of Operations's response is unfavorable, the inmate may appeal to the Office of the Executive Director within five (5) days of receipt of the Chief of Operations response by mailing copies of the original complaint and copies of all responses. (Id. at 4, Procedure E, ¶¶ 1 and 2.) The Office of the Executive Director must respond to an inmate's appeal within ten (10) days of receipt of all information. (Id., ¶3.) Unless the inmate has been notified of an extension of time for a response, the inmate may move to the next stage of the grievance process if the inmate does not receive a response at the expiration of the time limit at any stage of the process. (Id., Procedure F, ¶1.) The grievance process must be concluded within sixty (60) days, inclusive of any extensions. (Id., ¶2.)

The West Virginia Regional Jail and Correctional Facility Authority Policy and Procedure 14003 further provides that when an inmate files a grievance alleging reprisal for utilizing the grievance process, the grievance is to be immediately forwarded to the Chief of Operations. (Id. at 4-5, Procedure H, ¶¶1-3.) The Chief of Operations must respond to the allegations within five (5) days of receipt of the allegations identifying the action taken, the basis for the action taken, and an explanation of the appeal process for a second level decision. (Id., ¶5.)

To discern whether and to what extent Plaintiff has attempted to exhaust administrative remedies, the undersigned has reviewed copies of Plaintiff's administrative grievances and responses thereto which were submitted by Defendants. Plaintiff has filed approximately fifty (50) grievances between 1999 and 2003. It does not appear that Plaintiff filed any grievances with respect to the issues raised in his Complaint except for his claim that staff removed a newspaper and Bible from his cell in February of 2003. Plaintiff filed a grievance with respect to that claim on February 24, 2003. Plaintiff received a response on March 13, 2003, advising that the items were removed as a result of inmates trashing sections of the jail and that he could have the items returned once he is moved out of the lock-down section. Although it appears that Plaintiff may have received a response outside the time period set forth in the West Virginia Regional Jail and Correctional Facility Authority Policy and Procedure 14003, Plaintiff did not seek further review of his grievance by the Chief of Operations as permitted by the policy governing the grievance procedure once the time had expired for receiving a response. Furthermore, Plaintiff did not attempt to appeal the decision of the Chief of Operations after he received it on March 13, 2003. Plaintiff has not submitted any further documentation as required by the Court to counter Defendants' contention that he did not exhaust his administrative remedies. Based upon the documents of record, Plaintiff

clearly did not exhaust his administrative remedies as required under the PLRA. Accordingly, Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment should be granted.

## **PROPOSAL AND RECOMMENDATION**

Accordingly, the undersigned hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. No. 16) and **REMOVE** this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days (ten days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) *cert. denied*, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Johnston,

and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to counsel of record and to Plaintiff.

ENTER: October 5, 2006

                                      R. Clarke VanDervort
                                      United States Magistrate Judge